O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYRRIFIC, LLC,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>EDVIN KARAPETIAN, an individual, EDWARD MINASYAN, an individual, LENA AMERKHANIAN, an individual, and EDO TRADING, INC., a California corporation,<br><br>　　　　　Defendants. | Case No. 2:12-cv-04499-ODW(Ex)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [24]** |

## I.  INTRODUCTION

Defendants Edvin Karapetian, Edward Minasyan, Lena Amerkhanian, and EDO Trading, Inc. move to dismiss Plaintiff Toyrrific, LLC's Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), and for a more definite statement under Rule 12(e).  (ECF No. 24.)  For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.[1]

## II.  FACTUAL BACKGROUND

Toyrrific is a leader in the manufacturing, selling, and marketing of specific types of toys.  (Compl. ¶ 8.)  It also operates HobbyTron, which sells toys through its website, HobbyTron.com.  (*Id.*)

---

[1] Having considered the papers filed in support of and in opposition to this Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

Karapetian is a former Toyrrific employee who, along with Minasyan, allegedly stole Toyrrific's products, trade dress, copyrighted materials, trademarks, and trade secret information to establish a competing business, HobbyChase. (Compl. ¶¶ 6, 11–15.) HobbyChase operated through the website HobbyChase.com, for which Toyrrific alleged Karapetian and Minasyan used the same platform, design, content, product descriptions, photography, and graphics that Toyrrific used for HobbyTron.com. (Compl. ¶ 15.)

As a result of Karapetian and Minasyan's alleged infringement, Toyrrific filed an action against Karapetian and Minasyan in August 2010 for copyright infringement and other claims related to the unlawful interference with Toyrrific's company. *Toyriffic[2] v. Karapetian* ("*Toyriffic I*"), No. CV 10-5813-ODW(Ex) (C.D. Cal. Aug. 5, 2010). On November 24, 2010, this Court issued a preliminary injunction in *Toyriffic I* that enjoined Karapetian and Minasyan from continued infringement of HobbyCase's intellectual property. (Compl. ¶ 16.) The parties ultimately resolved *Toyriffic I* on December 12, 2011, through the execution of a Settlement Agreement and Mutual General Release ("Agreement").

By the Agreement, Karapetian and Minasyan agreed to "cease all operations of the business known as HobbyChase.com" and comply with the Court's preliminary injunction, which specifically prevented Karapetian and Minasyan's (and any of their associates') use of the HobbyChase trademark and continuation of the website HobbyChase.com, or *any similar website*. (Agreement ¶ 3.) Except for claims arising out of the Agreement, the parties also agreed to "absolutely, forever and fully" discharge each other and their respective agents "from all claims, administrative claims, demands, and/or causes of action heretofore or hereafter arising out of, connected with, or incidental to [*Toyriffic I*]." (Agreement ¶ 4.)

---

[2] The action currently before the Court is styled as *Toyrrific LLC v. Karapetian*, where "Toyrrific" has two *r*'s and one *f*. *Toyriffic I*, however, was styled as *Toyriffic LLC v. Karapetian*, where "Toyriffic" has one *r* and two *f*'s. The Court maintains this subtle distinction.

2

In executing the Agreement, the parties expressly disclaimed that they had not relied on any "statement, representation, or promise by the Parties" regarding any fact relied upon in entering into the Agreement, but instead relied solely "upon their own investigation, legal counsel and judgment." (Agreement ¶ 7(a).) The parties further agreed that "each Party is aware that it may hereafter discover claims or facts in addition to or different from those they now know or believe to be true with respect to the matters related" to the Agreement, but that all parties nevertheless intended "to fully, finally, and forever settle and release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed with regard to the dispute." (Agreement ¶ 7(d).)

Toyrrific filed this subsequent action on May 23, 2012. Toyrrific now alleges that Defendants have infringed upon Toyrrific's business in direct violation of the Agreement. (Compl. ¶ 21.) Specifically, Toyrrific contends Defendants formed EDO Trading, a new business that infringes upon Toyrrific's products through the operation of a new website, airsoftrc.com. (Compl. ¶ 20.) Toyrrific alleges airsoftrc.com is nearly identical to HobbyChase.com, and was formed prior to the execution of the Agreement (November 24, 2010), but after this Court entered the preliminary injunction in *Toyriffic I* (December 12, 2011). (Compl. ¶ 19–21.) In spite of the recitations in the Agreement, Toyrrific maintains that in agreeing to settle *Toyriffic I*, it relied on Defendants' representations that they would not continue infringement. (Compl. ¶ 19.)

The Complaint names the same two Defendants as the prior action (Karapetian and Minasyan), as well as two new Defendants: Lena Amerkhanian, who is alleged to be Minasyan's girlfriend, and EDO Trading, a corporation alleged to have been formed by Minasyan, Karapetyan, and Amerkhanian prior to the execution of the Agreement. (Compl. ¶ 20.) Defendants now move to dismiss Toyrrific's Complaint in its entirety.

### III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts"

supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); see *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### IV. DISCUSSION

Toyrrific's Complaint alleges seven claims for: (1) violation of the Lanham Act; (2) copyright infringement; (3) contributory infringement; (4) trade dress infringement; (5) breach of contract; (6) fraud without intent to perform—rescission of settlement agreement; and (7) unfair competition. Defendants move to dismiss Toyrrific's Complaint in its entirety under Rule 12(b)(6) for failure to state a claim. In addition, should the Court dismiss all of the claims except the fifth, Defendants move to dismiss the fifth claim for breach of contract pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. Finally, Defendants move for a more definite statement as to Amerkhanian's role in the alleged claims pursuant to Rule 12(e). The Court considers each of Defendants' motions in turn.

**A.    Rule 12(b)(6) Motion to Dismiss**

*1.    Parties subject to the Agreement*

The Court begins by addressing whether new Defendants Amerkhanian and EDO Trading are bound by the Agreement executed in *Toyriffic I*. That Agreement not only released all claims the *Toyriffic I* litigants had against each other, but also those claims that could be asserted against their "present and former agents, . . . affiliates, . . . partners, . . . associates, . . . representatives, . . . and all those claiming by, through, under or in concert with them from any and all claims, administrative

claims, demands, and/or causes of action heretofore or hereafter arising out of, connected with, or incidental to [*Toyriffic I*]." (Agreement ¶ 4.)

Defendants argue that Amerkhanian is subject to the Agreement because she is Minasyan's girlfriend and therefore "associate." (Mot. 8–9.) Defendants further contend that EDO Trading is Karapetian and Minasyan's "affiliate" because Karapetian and Minasyan founded EDO Trading along with Amerkhanian. (Mot. 9.) Toyrrific responds that neither Amerkhanian nor EDO Trading were parties to *Toyriffic I*, and the fact that Amerkhanian is the girlfriend of one of the prior Defendants does not make her, or any company she helped form, subject to the Agreement. (Opp'n 8.)

While a girlfriend may not be automatically bound under her boyfriend's contracts, the Complaint alleges that Amerkhanian played a direct role in creating EDO Trading while associating with Karapetian and Minasyan. (Compl. ¶ 4.) Specifically, Toyrrific alleges that Defendants (including Amerkhanian) purchased the www.airsoftrc.com URL on February 17, 2011, and that Amerkhanian helped Minasyan and Karapetian form EDO Trading on June 30, 2011 (Compl. ¶ 20)—both of which occurred after the Court entered the preliminary injunction in *Toyriffic I* on November 24, 2010, but before the parties resolved *Toyriffic I* by the Agreement on December 12, 2012.

The Agreement's release clause is unambiguous in its intention to bind those working with Minasyan and Karapetian in matters relating to *Toyriffic I*. Taking as true Toyrrific's allegations that Amerkhanian associated with Karapetian and Minasyan in creating and maintaining EDO Trading in violation of the Agreement, it takes no stretch of the imagination to construe Amerkhanian as an affiliate, employee, partner, associate, or representative of Minasyan—their romantic relationship notwithstanding. And as a simple matter of policy, Toyrrific cannot skirt the restrictions of the Agreement's release clause by suing those who, while not express parties to the Agreement, performed the same infringing conduct along with the

*Toyriffic I* parties. Thus, the Court finds that the Agreement applies to all of the moving Defendants.

### 2. *Preclusion of claims under the Agreement*

Rather than consider the merits of each claim individually, the Court proceeds to consider the overarching issue in this case: whether the Agreement executed in *Toyriffic I* precludes Toyrrific from bringing the claims alleged in its Complaint. This is Defendants' main argument for dismissal of Toyrrific's first, second, third, fourth, sixth, and seventh claims, which all revolve around Defendants' alleged infringement upon Toyrrific's business, HobbyTron.

In its Complaint and opposition to Defendants' motions, Toyrrific primarily emphasizes that Defendants misrepresented their intentions to abide by the Court's preliminary injunction, and that these misrepresentations should void the Agreement entirely. (Compl. ¶ 59; Opp'n 7.) Specifically, Toyrrific alleges that while Defendants promised in the Agreement to comply with the Court's preliminary injunction and cease infringement of HobbyTron, Defendants actually had concurrent plans (and had taken steps) to continue unlawful competition by creating the new website, airsoftrc.com. (Compl. ¶ 46–49.)

Generally, a party fraudulently induced into entering an agreement is entitled to a rescission of the agreement. *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1526 (9th Cir. 1987). Were this the case here, the Agreement would be void. But while Toyrrific contends it relied on Defendants' representations in the Agreement, the Agreement itself unambiguously states that the parties "did not rely upon any . . . statement, representation or promise . . . in executing this Settlement Agreement, but instead relied upon their own investigation, legal counsel and judgment." (Agreement ¶ 7(a).) Further, the parties agreed in the Agreement to release each other from claims relating to the release that were both *known or unknown*, even while acknowledging that "they may hereafter discover claims or facts in addition to or different from those that they now know or believe to exist with

1 respect to the subject matter of this Settlement Agreement and which . . . may have
2 materially affected this settlement." (Agreement ¶ 5.)

3 So, contrary to Toyrrific's contentions that it was fraudulently induced to enter into the Agreement, Toyrrific, Karapetian, and Minasyan explicitly and purposely represented in the enforceable, arm's length Agreement that they had *not* relied on any representations made by other parties to the agreement. This provision in the Agreement unravels Plaintiff's entire argument that it was fraudulently induced. Thus, considering the intention of the parties expressed in the Agreement, the Court finds there was no fraudulent inducement on the part of the Defendants, and therefore Toyrrific is not entitled to rescission.

Because the Court has established that the Agreement itself is enforceable, the vital issue now becomes whether Defendants' current infringing activity of maintaining a competing company is subject to the Agreement, which precludes any claims "arising out of, connected with, or incidental to" the *Toyriffic I* litigation. (Agreement ¶ 4.)

Under California law, "the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *U.S. Cellular Inv. Co. of L.A. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002). Here, the language of the release clearly conveys the parties' intent to discharge all unknown claims "absolutely, forever and fully," particularly in light of the parties' express waiver of the protections of California Code Section 1542.[3] (Agreement 5, ¶ 4.) Further, it is evident that the parties intended to settle more than those claims dealing directly with Hobbychase.com, as the language of the Agreement broadly absolves Defendants from liability for claims even "incidental to" *Toyriffic I*. (Agreement 2.)

---

[3] Section 1542 of the California Civil Code provides that "a general release does not extend to claims which the creditor does not know or expect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Cal. Civ. Code § 1542.

Toyrrific alleges that Defendants' current business is "nearly identical" to HobbyChase, and Defendants' new website, airsoftrc.com, uses the same platform, design, layout, and structure as the HobbyChase website. (Compl. ¶¶ 6, 20.) Therefore, the Agreement specifically excludes Toyrrific's present claims, which are clearly incidental to and connected with the first action brought before this Court.

Because the Agreement precludes Toyrrific from bringing its first, second, third, fourth, sixth, and seventh claims, Defendants' Motion to dismiss with respect to these claims is **GRANTED.**

3. *Fifth claim for breach of contract*

The release clause of the Agreement impedes future actions "[e]xcept as to such rights or claims as may be created by this Settlement Agreement." (Agreement 5, ¶ 4.) Thus, the only potentially viable claim in Toyrrific's present Complaint is for breach of the Agreement itself.

To state a claim for breach of contract under California law, a plaintiff must plead: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance of the contract; (3) defendant's breach of the contract; and (4) resulting damages. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). Toyrrific has properly alleged all the elements of a valid breach of contract claim.

In the Complaint, Toyrrific contends that Defendants breached the Agreement by failing to comply with the terms of the Court's preliminary injunction, failing to stop operating a website similar to hobbychase.com, failing to cease operating the HobbyChase business, and failing to deliver assets of HobbyChase as described in the Bill of Sale to the Agreement. (Compl. ¶ 49.) Further, Toyrrific pleads that it performed all conditions required of it under the Agreement, and that as a result of Defendants' breach, it has incurred damages exceeding one million dollars. (*Id.*) This easily suffices to meet Toyrrific's relatively light pleading burden for the purposes of a motion to dismiss.

Because Toyrrific sufficiently pleads its breach of contract claim, Defendants' Motion with respect to Toyrrific's fifth claim is **DENIED**.

**B.     Rule 12(b)(1) Motion to Dismiss**

Next, Defendants argue that if the fifth claim for breach of contract is left to stand alone, it should be dismissed based for lack of subject-matter jurisdiction under Rule 12(b)(1). But the Court may exercise ancillary jurisdiction, which allows federal courts to hear otherwise improper matters that are incidental to other actions before them. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).

For a Court to assert ancillary jurisdiction in the enforcement of a settlement agreement, the party seeking enforcement must allege a violation of the agreement. *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007). Here, Toyrrific's fifth claim alleges violation of the Agreement itself. Further, the Agreement's provision that "[t]he Honorable Otis D. Wright II, (*sic*) shall retain jurisdiction over this matter if a breach is alleged by either Party" enables the Court to retain jurisdiction. *Kokkonen*, 511 U.S. at 381–82 ("[A] federal court has jurisdiction to enforce a settlement agreement in a dismissed case when . . . the court has retained jurisdiction over the settlement contract."). The Court therefore asserts ancillary jurisdiction over the fifth claim, and Defendants' Motion pursuant to Rule 12(b)(1) is **DENIED**.

**C.     Rule 12(e) Motion for a More Definite Statement**

Defendants finally contend that Toyrrific's allegations regarding Defendant Amerkhanian are ambiguous, and thus, if not dismissed, require a more definite statement as to Amerkhanian's role in the alleged misconduct. As the majority of Toyrrific's claims have been dismissed, the Court need only concern itself with whether Toyrrific has successfully pleaded that Amerkhanian is a proper defendant in the breach-of-contract claim.

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading,

the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). However, courts disfavor 12(e) motions to strike since pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim. *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011).

In the Complaint, Toyrrific states that Amerkhanian, along with Minasyan and Karapetyan, "previously formed [EDO Trading] on or about June 30, 2011." (Compl. ¶ 20.) Defendant contends that the word "formed" is vague. The Court disagrees; Toyrrific has more than adequately indicated that Amerkhanian played a sufficient role in breaching the Agreement by creating and maintaining EDO Trading. Defendants' motion under Rule 12(e) is therefore **DENIED**.

## V. CONCLUSION

For the reasons discussed above, Defendants' Motion is **GRANTED** with respect to Toyrrific's first, second, third, fourth, sixth, and seventh claims. The Motion with respect to Toyrrific's fifth claim for breach of contract is **DENIED**.

**IT IS SO ORDERED.**

August 16, 2012

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**