O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TOYRRIFIC, LLC,

                     Plaintiffs,

     v.

EDVIN KARAPETIAN; EDWARD
MINASYAN; LENA AMERKHANIAN;
and EDO TRADING, INC.,

                     Defendants.

EDVIN KARAPETIAN; and EDWARD
MINASYAN,

                     Counterclaimants,

     v.

TOYRRIFIC, LLC; KEVORK
KOUYMJIAN; and VIKEN
KOUYOUMJIAN,

                     Counterdefendants.

Case No. 2:12-cv-04499-ODW(Ex)

**ORDER GRANTING PLAINTIFF
AND COUNTER-DEFENDANT
TOYRRIFIC LLC'S SPECIAL
MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL
PROCEDURE § 425.16 (ANTI-
SLAPP) [33]**

# I.   INTRODUCTION

Before the Court is Plaintiff and Counterdefendant Toyrrific LLC's special motion to strike Defendants and Counterclaimants Edvin Karapetian and Edward Minasyan's breach of contract counterclaim.  (ECF No. 33.)  Having carefully considered the papers filed in support of and in opposition to this motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7–15.  For the reasons that follow, the Court **GRANTS** Toyrrific's anti-SLAPP motion under California Civil Procedure Code section 426.16.

## II.   FActual Background

Toyrrific is a company known for manufacturing, marketing, and selling various types of toys.  (Compl. ¶ 8.)  Toyrrific promotes its business via its Hobbytron website.  (*Id.*)

Edvin Karapetian is a former Toyrrific employee who allegedly worked with Edward Minasyan to steal Toyriffic's products, business information, and intellectual property in order to establish a competing online business called Hobbychase.  (*Id.* ¶¶ 11–12.)  The Hobbychase website allegedly infringed upon Toyrrific's Hobbytron website by using the same platform, design, content, product descriptions, photography, and graphics.  (*Id.* ¶ 15.)

On August 5, 2010, Toyrrific filed suit against Karapetian and Minasyan for copyright infringement and related claims.  *Toyriffic[1] v. Karapetian* ("*Toyriffic I*"), No. CV 10-5813-ODW(Ex) (C.D. Cal. Aug. 5, 2010.)  This Court issued a preliminary injunction in *Toyriffic I* on November 24, 2010, which enjoined Karapetian and Minasyan from infringing upon Toyrrific's intellectual property. (Compl. ¶ 16.)  The parties eventually executed a settlement agreement that resolved *Toyriffic I* in December 2011.  (*Id.* ¶ 18.)  In addition to fully settling all claims related to *Toyriffic I*, the settlement agreement contained two confidentiality provisions.  (*Id.*

---

[1] The action currently before the Court is styled as *Toyrrific LLC v. Karapetian*, where "Toyrrific" has two *r*'s and one *f*.  *Toyriffic I*, however, was styled as *Toyriffic LLC v. Karapetian*, where "Toyriffic" had one *r* and two *f*'s.  The Court maintains this subtle distinction.

Ex. 3.)  The first of these provisions was Paragraph 1(aa), which said that Exhibit A to the agreement "will be for attorney's eyes only, and will be kept confidential and used by counsel for purposes of impeachment in the Issagoolian Action."  (*Id.*)  The second was Paragraph 6, which required the parties to keep any terms of the settlement agreement confidential.  (*Id.*).

Despite this resolution, Toyrrific filed this action ("*Toyrrific II*") against Karapetian, Minasyan, Lena Amerkhanian, and EDO Trading, Inc. on May 23, 2012.  (ECF No. 1.)  In its Complaint, Toyrrific alleges that Karapetian and Minasyan— along with Minasyan's girlfriend, Amerkhanian—breached the terms of the *Toyriffic I* settlement agreement by creating EDO Trading and operating another infringing website, www.airsoftrc.com.  (Compl. ¶ 20.)

Karapetian, Minasyan, Amerkhanian, and EDO Trading filed a motion to dismiss Toyrrific's Complaint on July 9, 2012.  (ECF No. 24.)  The Court granted this motion in part on October 16, 2012, but let Toyrrific's breach-of-contract claim stand.  (ECF No. 30.)  Thereafter, Karapetian and Minasyan launched a counterclaim against Toyrrific, arguing that Toyrrific also breached the terms of the *Toyriffic I* settlement agreement.  (ECF No. 31.)  Specifically, Karapetian and Minasyan allege that Toyrrific breached the agreement by (1) attaching the agreement to the *Toyrrific II* complaint in violation of Paragraph 6; (2) failing to keep Exhibit A to the agreement confidential in violation of Paragraph 1(aa); and (3) asserting already settled claims.  (Answer ¶¶ 16–18.)

In response, Toyrrific filed a special motion to strike Karapetian and Minasyan's counterclaim on September 24, 2012, which is the focus of the Court's analysis here.  (ECF No. 33.)

### III.   LEGAL STANDARD

In 1992, the California legislature enacted California Code of Civil Procedure section 425.16, commonly dubbed California's "anti-SLAPP"[2] statute, in response to

---

[2] Short for "strategic lawsuit against public participation."

1    a perceived "disturbing increase" in the number of civil actions aimed at private

2    citizens designed to deter or punish those citizens from exercising their political or

3    legal rights.  Cal. Civ. Proc. Code § 425.16(a); *U.S. ex rel. Newsham v. Lockheed*

4    *Missiles & Space Co.*, 190 F.3d 963, 970 (9th Cir. 1999).  "The hallmark of a SLAPP

5    suit is that it lacks merit, and is brought with the goals of obtaining an economic

6    advantage over a citizen party by increasing the cost of litigation to the point that the

7    citizen party's case will be weakened or abandoned, and of deterring future litigation."

8    *Newsham*, 190 F.3d at 970–71.

9    　　　　The anti-SLAPP statute allows defendants in California state or federal courts

10   to counter SLAPP suits by making a special motion to strike a claim if that claim

11   arises from an act by the defendants to further their right of petition or free speech in

12   connection with a public issue.  *Id.* § 425.16(b)(1); *Newsham*, 190 F.3d at 973

13   (concluding that the twin aims of the *Erie* doctrine "favor application of California's

14   anti-SLAPP statute in federal cases").  An act qualifies for protection under this

15   statute if it falls within one of four categories:

16   　　　　(1) any written or oral statement or writing made before a legislative,

17   　　　　executive, or judicial proceeding, or any other official proceeding

18   　　　　authorized by law[;] (2) any written or oral statement or writing made in

19   　　　　connection with an issue under consideration or review by a legislative,

20   　　　　executive, or judicial body, or any other official proceeding authorized by

21   　　　　law[;] (3) any written or oral statement or writing made in a place open to

22   　　　　the public or a public forum in connection with an issue of public

23   　　　　interest[;] or (4) any conduct in furtherance of the exercise of the

24   　　　　constitutional right of petition or the constitutional right of free speech in

25   　　　　connection with a public issue or an issue of public interest.

26   *Id.* § 425.16(e).

27   　　　　In considering an anti-SLAPP motion, a court must engage in a two-step

28   process.  First, the court looks to whether the defendants have made an initial prima

facie showing of whether the plaintiffs' claims arise from a protected act under the statute. *Ingles v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1061 (2005). To make this determination, the court looks to any pleadings or affidavits that state facts supporting or refuting the parties' theories of liability or defense regarding the claim. *Martinez v. Metabolife Int'l Inc.*, 113 Cal. App. 4th 181, 186 (2003).

If the defendants establish this prima facie showing, the burden then shifts to the plaintiffs to demonstrate "a probability that [they] will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The plaintiffs must provide admissible evidence to establish that "the complaint is legally sufficient and supported by a prima facie showing of facts [that] sustain a favorable judgment." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). If the plaintiffs fail to make this showing by a preponderance of the evidence, the court must grant the motion to strike and award the prevailing defendant his or her attorney's fees and costs. *Ingles*, 129 Cal. App. 4th at 1061–62; Cal. Civ. Proc. Code § 425.16(c)(1).

## IV.   DISCUSSION

In its anti-SLAPP motion, Toyrrific sets forth that Karapetian and Minasyan's counterclaim improperly challenges Toyrrific's constitutionally protected act of petition and free speech. (Mot. 3–5.) Toyrrific additionally posits that because the counterclaim fails to establish a legally sufficient action for breach of contract, it must fail. (*Id*. 3–4.)

Karapetian and Minasyan challenge Toyrrific's position by arguing that (1) Toyrrific waived the protections of the anti-SLAPP statute by agreeing to the settlement agreement's confidentiality provisions; and (2) they have a reasonable probability of prevailing on their breach of contract claim. (Opp'n 2–6.) The Court now considers these arguments in light of the anti-SLAPP statute's analytical framework.

/ / /

/ / /

**A.      Toyrrific Has Not Waived Applicability of the Anti-SLAPP Statute**

Karapetian and Minasyan's threshold argument that Toyrrific has waived the anti-SLAPP statute's protections in this action requires no serious discussion.  While these counterclaimants contend on the one hand that the confidentiality provisions "require public silence," they also recognize that Toyrrific "could have either alleged the Agreement's existence without attaching it, or could have filed the Agreement *under seal*."  (Opp'n 3–4.)  This concession that Toyrrific could, in fact, have brought their breach-of-contract Complaint in some fashion without running afoul of the confidentiality provisions defeats any straight-faced argument that Toyrrific has agreed not to sue and therefore waived the application of California's anti-SLAPP statute to this case.  An agreement not to speak publically about a case is a far cry from an agreement not to seek redress before the courts for breach of the private agreement.  And indeed, the settlement agreement itself specifically reserves jurisdiction in this Court for resolution of any such dispute.  Settlement Agreement ¶ 2 ("In the event that a material violation of this Settlement occurs, the Parties agree that the Honorable Otis D. Wright II, will retain jurisdiction to resolve the dispute.").  The Court therefore proceeds to apply the anti-SLAPP statute to the counterclaim at issue.

**B.      *Toyrrific II* Stems from Toyrrific's Constitutionally Protected Right to Petition**

Toyrrific's breach-of-contract claim in the underlying *Toyrrific II* Complaint— alleging Defendants' violation of the substantive terms of the settlement agreement— easily satisfies the first prong of the anti-SLAPP test.  While Karapetian and Minasyan do not directly address their opponent's position on this issue, it is clear that *Toyrrific II* is an act in furtherance of Toyrrific's constitutional right to engage in petition and free speech.  *See* Cal. Civ. Proc. Code § 425.16(a).  Specifically, *Toyrrific II* fits within the anti-SLAPP statute's first category of protected acts because the Complaint is a writing made before a judicial proceeding.  Cal. Civ. Proc. Code § 425.16(e)(1).  And as addressed above, the confidentiality provisions in the

1  settlement agreement do not prevent Toyrrific from bringing an action to enforce the

2  agreement as they have done here; any other reading of the provisions would frustrate

3  the purpose of the parties' settlement.

4        Because *Toyrrific II* is Toyrrific's valid attempt to petition the Court, the burden

5  now shifts to Karapetian and Minasyan to demonstrate the legal sufficiency of their

6  breach of contract counterclaim.

7  **C.    Karapetian and Minasyan Have Not Established a Probability of**

8          **Prevailing on the Merits of their Breach-of-Contract Counterclaim**

9        To survive this anti-SLAPP motion, Karapetian and Minasyan must show that

10 their breach-of-contract counterclaim has "minimal merit."  *Navellier v. Sletten*, 29

11 Cal. 4th 82, 95 (2002).  To properly allege a breach of contract, Karapetian and

12 Minasyan must plead (1) the existence of a contract (the settlement agreement);

13 (2) their performance or excuse for nonperformance under the settlement agreement;

14 (3) Toyrrific's breach of the settlement agreement; and (4) that Toyrrific's breach

15 caused them damages.  *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App.

16 4th 1602, 1614 (2011).

17       Based on both the counterclaim itself and the papers filed for and against

18 Toyrrific's anti-SLAPP motion, the Court finds that Karapetian and Minasyan have

19 failed to allege and establish minimal merit for a viable breach-of-contract claim.  It is

20 undisputed that the *Toyriffic I* settlement agreement exists, and Karapetian and

21 Minasyan sufficiently pleaded that Toyrrific breached the agreement by filing

22 *Toyrrific II* and failing to keep the agreement and its Exhibit A confidential.  (Compl.

23 ¶ 18; Answer ¶¶ 11, 16–18.)  However, the performance and the damages elements to

24 the breach-of-contract claim are absent.

25       With respect to performance under the agreement, Karapetian and Minasyan

26 allege that they have "substantially performed all of the conditions which the

27 [a]greement required them to perform."  (Countercl. ¶ 15.)  *Iqbal* and *Twombly* aside,

28 the conclusory nature of the counterclaimants' performance allegations is baffling

1    when the very basis for the *Toyrrific II* Complaint itself is that Karapetian and

2    Minasyan have failed to fulfill their own obligations under the settlement agreement.

3    (Countercl. ¶ 15.)  Moreover, Karapetian and Minsayan's Opposition to the anti-

4    SLAPP motion is devoid of any allegations, facts, or evidence—conclusory or

5    otherwise—that they have performed under the settlement agreement.  While it is true

6    that the Court must "not weigh credibility . . . [or] . . . evaluate the weight of the

7    evidence" in ruling on an anti-SLAPP motion and must instead looks at the facts in

8    the light most favorable to the Counterclaimants, there is simply no evidence here at

9    all.  *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699–700

10   (2007).  Karapetian and Minasyan therefore fail to set forth any admissible evidence

11   to help their counterclaim survive the instant anti-SLAPP motion.

12           Even if the Court were to assume that Counterclaimants successfully performed

13   their obligations under the settlement agreement, the counterclaim at issue also fails to

14   demonstrate how Toyrrific's alleged breach of the settlement agreement's

15   confidentiality provisions has damaged Karapetian and Minasyan.  The counterclaim

16   states that Toyrrific's "acts have harmed Counterclaimants, in particular with

17   vexatious, repeated litigation, forcing Counterclaimants to incur attorney fees, in an

18   amount according to proof."  (Answer ¶ 19.)  Karapetian and Minasyan support their

19   damages allegation by clarifying that they seek both damages and attorney's fees and

20   costs, thus making the distinction that these two remedies are not duplicative.  (Opp'n

21   6.)  But this does not aid their case.

22           The *Toyrrific II* action calls upon Karapetian and Minasyan to incur legal

23   expenses to defend their alleged breach of the settlement agreement insofar as they

24   allegedly creating EDO Trading and launched another infringing website.  Karapetian

25   and Minasyan concede in their Opposition that the Toyrrific could have permissibly

26   asserted this breach-of-contract claim without violating the agreement's

27   confidentiality provisions by filing the Complaint or the settlement agreement under

28   seal.  (Opp'n 4.)  There seems to be no debate that had Toyrrific done so, there would

1    have been no breach of the confidentiality provisions, and Karapetian and Minasyan

2    would have incurred legal fees related solely to *their* alleged breach of the settlement

3    agreement.

4         What *Karapetian and Minsayan*'s breach-of-contract claim demands by way of

5    damages allegations is some showing that they have been harmed specifically *as a*

6    *result of the breach of confidentiality*.  This is separate entirely from the harm they

7    purport to suffer as a result of defending the *Toyrrific II* Complaint, which contains no

8    confidentiality allegations.  Without any evidence of damages directly tied to the

9    alleged breach of confidentiality, the Court cannot find a probability of success for

10   Counterclaimant's action for breach of contract.  *See Navellier v. Sletten*, 106 Cal.

11   App. 4th 763, 775 (2003)

12        Because Karapetian and Minasyan have failed to establish any facts—much less

13   introduce any admissible evidence—supporting their claims that they have performed

14   under the settlement agreement and have been damaged by Toyrrific's alleged breach

15   of the confidentiality agreement, these Counterclaimants fail to meet their burden in

16   opposing Toyrrific's Anti-SLAPP motion.  The Court must therefore **GRANT**

17   Toyrrific's motion.

18   **D.    The Litigation Privilege Does Not Save Karapetian and Minasyan's**

19          **Counterclaim**

20        Despite the deficiencies in their arguments and factual showings, Karapetian

21   and Minasyan feebly assert that the litigation privilege protects their breach-of-

22   contract counterclaim from scrutiny under the anti-SLAPP statute.  (Opp'n 3.)  It is

23   true that the litigation privilege protects most communicative statements made during

24   the course of a judicial proceeding.  Cal. Civ. Code § 47(b)(2).  But Karapetian and

25   Minasyan fail to realize that this privilege generally protects such communications

26   from *tort* liability.  *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1491 (2005); *see also*

27   *Navellier*, 106 Cal. App. 4th at 770 ("The litigation privilege immunizes litigants from

28   liability for torts . . . [that] arise from communications in judicial proceedings. . . . The

1  primary purpose of the privilege is to afford litigants the utmost freedom of access to

2  the courts without fear of being harassed subsequently by derivative tort actions."

3  (internal quotation marks omitted)).  Toyrrific's anti-SLAPP motion seeks only to

4  strike a breach-of-contract counterclaim raised as a means to chill Toyrrific's exercise

5  of its freedom-of-speech and freedom-of-petition rights; it does not seek to impose tort

6  liability for defamatory statements (for example) contained in the counterclaim.  Thus,

7  the litigation privilege is an inappropriate defense to the anti-SLAPP motion at hand.

8  **E.    Toyrrific Is Entitled to Attorney's Fees and Costs**

9      Because Toyrrific's anti-SLAPP motion successfully defeats Karapetian and

10  Minasyan's breach-of-contract claim, Toyrrific is entitled to attorney's fees and costs

11  related to the motion.  Cal. Civ. Proc. Code § 425.16(c)(1); *Lafayette Morehouse, Inc.*

12  *v. Chronicle Pub. Co.*, 39 Cal. App. 4th 1379, 1383 (1995).  In its papers, however,

13  Toyrrific does not specify what this amount is.  (Mot. 7.)  As such, Toyrrific may

14  submit their total attorney's fees and costs in a noticed motion to the Court no later

15  than **November 7, 2012**.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

10

# V.  CONCLUSION

For the reasons set forth above, Karapetian and Minasyan's ill-supported breach-of-contract counterclaim fails to survive Toyrrific's special motion to strike. The Court therefore **GRANTS** Toyrrific's anti-SLAPP motion and awards Toyrrific its attorney's fees and costs associated with bringing the motion.

**IT IS SO ORDERED.**

October 25, 2012

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**